# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FIRST BANK AND TRUST**                           **CIVIL ACTION**

**VERSUS**                                          **NO. 14-2017**

**SCOTTSDALE INSURANCE COMPANY**                   **SECTION: "G"(1)**

## ORDER AND REASONS

This litigation arises because Plaintiff First Bank and Trust disputes the propriety of Defendant Scottsdale Insurance Company's attempted payment of insurance proceeds jointly to Plaintiff First Bank and Trust and its alleged debtor Edward Neely, a non-party.[1] Plaintiff asserts that it is entitled to a judgment for the full amount of the sums Defendant attempted to pay. Defendant maintains that it has fully discharged its obligation. Presently pending before the Court is a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)"[2] filed by Defendant. Having considered the motion, the memoranda in support, the memorandum in opposition, and the applicable law, the Court will deny the pending motion.

## I. Background

### A.    *Factual Background*

In its complaint, Plaintiff alleges that Defendant issued a policy of insurance to Edward Neely covering seven properties in New Orleans ("Insured Properties.").[3] Plaintiff contends that

---

[1] Although Neely is not a party to this action, the Court was informed shortly before deciding the instant motion that Neely was involved in a prior proceeding related to the insurance policy at issue here, Civ. Action No. 14-48, *Neely v. Scottsdale Insurance Company*. The parties have informed the Court that the prior proceeding has no effect on the arguments advanced in connection with the instant motion.

[2] Rec. Doc. 11.

[3] Rec. Doc. 1 at pp. 2–3.

Defendant's insurance policies designate it as the loss payee / mortgagee.[4] Plaintiff maintains that Neely is obligated to it, and granted it a multiple indebtedness mortgage on the insured properties to secure his obligation.[5] According to Plaintiff, Edward Neely and Sheryl Neely, neither of whom are parties to this suit, executed two promissory notes to it on January 29, 2008: a note for $977,600 and a note for $465,000.[6] Both notes, Plaintiff asserts, are secured by the mortgage upon the insured properties; principal amounts of $990,000 and $250,000, plus additional amounts, remain due on the notes.[7]

Plaintiff alleges that Defendant tendered two checks to Neely in connection with damage to the insured properties, including a check in the amount of $89,750, dated June 30, 2014 ("Check 1") and a check in the amount of $16,978.70, dated August 18, 2014 ("Check 2"), both of which Plaintiff possessed at the time it filed its complaint.[8] Plaintiff asserts that the terms of Defendant's insurance policy with Neely entitle Plaintiff to the amounts due under the policy, since its interest in the mortgage is superior to Neely's.[9] Plaintiff contends that, as the loss payee/mortgagee, it has "a direct cause of action" against Defendant for the amounts due under the policy, for the full amounts of both checks.[10] Plaintiff seeks these amounts, plus costs and legal interest.[11]

---

[4] *Id.* at p. 3.

[5] *Id.*

[6] *Id.* Edward Neely and Sheryl Neely executed Note 1. Edward Neely executed Note 2. Plaintiff contends that the amount of Note 2 was subsequently changed to $468,922.25. *Id.*

[7] *Id.*

[8] *Id.* at p. 4.

[9] *Id.*

[10] *Id.* at p. 5.

[11] *Id.*

### B.    Procedural Background

Plaintiff filed a complaint with this Court on September 4, 2014.[12] The matter was initially assigned to Section "J" of this Court, but Section "J" entered an "Order of Recusal"[13] on September 8, 2014, causing the matter to be reassigned to this Section, Section "G." On September 9, 2014, Plaintiff filed an *ex parte* "Motion to Deposit Original Checks for Safekeeping."[14] The Court granted Plaintiff's *ex parte* motion on September 10, 2014, causing Checks 1 and 2 to be deposited with the Clerk of Court pending the resolution of this matter.[15] On December 11, 2014, Defendant filed a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)."[16] On December 23, 2014, Plaintiff filed an opposition to Defendant's motion.[17] On January 2, 2015, with leave of Court, Defendant filed a reply in further support of its motion.[18]

## II. Parties' Arguments

### A.    Defendant's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)"[19]

In its motion to dismiss, Defendant contends that it "satisfied all duties it owed under the policy by issuing the check in the names of both [P]laintiff and the named insured," and that Plaintiff therefore has failed to state a claim upon which relief can be granted.[20] Defendant asserts that the

---

[12]  Rec. Doc. 1.

[13]  Rec. Doc. 5.

[14]  Rec. Doc. 6.

[15]  Rec. Doc. 7.

[16]  Rec. Doc. 11.

[17]  Rec. Doc. 17.

[18]  Rec. Doc. 22.

[19]  Rec. Doc. 11.

[20]  Rec. Doc. 11–1 at p. 3.

Mortgage Clause in its insurance policy provided that amounts due under the policy would be "paid to the mortgagee and you [Edward Neely], as interests appear."[21] According to Defendant, this Clause is a "simple or open mortgage clause" which, under Louisiana law, does not confer "a separate contractual right of action against the mortgagor's insurer."[22]

Defendant contends that under both simple and "standard" loss payee clauses, the insurer "typically" provides a joint check to the insured and the loss payee.[23]  The policy at issue here, Defendant maintains, requires Defendant to include both names on the check, and the policy's use of the phrase "as interests appear" operates to prevent the named insured from taking payment upon the check when the mortgagee has priority of payment.[24] The question of priority, Defendant asserts, "is an issue solely between the named insured and its mortgagee and does not restrict the insurer from including both names on payments made under the policy."[25] Defendant asserts that it complied with its obligations under the clause by paying losses owed under the policy to both Plaintiff and Neely.[26] Defendant further contends that it has done the same thing "on eight prior occasions" while adjusting claims filed on the Insured Properties, with no objection from Plaintiff; this prior history, Defendant contends, "exemplifies the propriety" of its payment process.[27]

---

[21] *Id.* at p. 4.

[22] *Id.* at pp. 4–6.

[23] *Id.* at p. 6.

[24] *Id.* at p. 7.

[25] *Id.*

[26] *Id.*

[27] *Id.*

Defendant asserts that it cannot be held liable unless "the responsibility of determining the amount due on the mortgage" is placed on it.[28] Defendant maintains that this responsibility should not be placed upon it, because: (1) it is not directly involved in the mortgage; (2)  the insurance policy does not expressly impose this duty; and (3) it is illogical to require it to determine what is due under the mortgage and apportion payments accordingly, because it is not privy to the current balance on the mortgage.[29] Therefore, Defendant asserts, the only duty it has is to issue payments in the name of the mortgagee and the named insured.[30] Defendant maintains that it issued payments in this way, consistent with Louisiana law, and therefore is under no obligation to take the "additional steps suggested by [P]laintiff[]."[31]

**B.    *Plaintiff's Opposition***

In opposition to Defendant's motion to dismiss, Plaintiff asserts that because Defendant issued checks that it cannot redeem without the endorsement of Neely, it has received "only two pieces of paper" that are "essentially worthless" in their own right, negating Defendant's assertion that it has satisfied its duties under the policy.[32]

Plaintiff contends that the Mortgage Clause in Defendant's insurance policy required it to make payments according to an allocation of interests in the insured properties.[33] "If payment by joint check could satisfy the insurer's obligation," Plaintiff contends, "there would be no

---

[28]  *Id.* at p. 8.

[29]  *Id.*

[30]  *Id.*

[31]  *Id.* at pp. 8–9.

[32]  Rec. Doc. 17 at pp. 1–2.

[33]  *Id.* at pp. 3–4.

requirement that the payment be made 'as interests appear.'"[34] Plaintiff maintains that this phrase permits it to recover the full amount of payment due to it from Scottsdale, including the full insurance payment where, as here, its mortgage interest exceeds the total amount payable under the policy.[35] According to Plaintiff, "[t]he jurisprudence has always held" that provisions like the Clause at issue here "creates a right, which can be enforced by the lender, in a direct action against the insurer."[36]

Moreover, Plaintiff contends, the distinction between an open clause and a Union clause is only relevant "when the insured has violated a policy provision that would cause the insured to deny coverage."[37] Here, Plaintiff avers, no such violation has been claimed.[38]  Nonetheless, Plaintiff argues that Defendant incorrectly characterized the mortgage clause at issue here as an open clause.[39] Rather, Plaintiff asserts, the disputed mortgage clause contains language establishing that it is a Union or standard clause, under which there is "no doubt" that it has a direct right of action against Defendant under Louisiana law.[40]

Plaintiff argues that if Defendant is concerned about being required to pay claims against it twice, then it is entitled to initiate an interpleader (or, in Louisiana, a concursus) proceeding to determine the parties' entitlement to payment before it pays.[41] Plaintiff maintains that Defendant's

---

[34] *Id.* at p. 4.

[35] *Id.* at pp. 4–6.

[36] *Id.* at p. 6.

[37] *Id.* at p. 10

[38] *Id.* at pp. 8–10.

[39] *Id.* at pp. 11–12.

[40] *Id.* at pp. 12–14.

[41] *Id.* at p. 14.

chosen method of payment is insufficient where, as here, the parties are unable to resolve their disagreements about their entitlement to payment under the policy.[42] Instead of "simply dropping the multiple payee check into the midst of the payees and encouraging them to fight it out," Plaintiff asserts, Defendant "is required by its policy to actually pay the claim."[43] In light of this obligation, Plaintiff argues, interpleader is the proper procedure to follow to safeguard the disputed funds until claimants' interests are determined.[44] In the present case, Plaintiff contends, it is entitled to the entire amount payable under the policy, and Neely is entitled to nothing; therefore, Plaintiff maintains, it has stated a claim upon which relief can be granted.

## C.    *Defendant's Reply*

In further support of the instant motion, Defendant argues that Plaintiff has cited no authority supporting the assertion that "an insurer is required to issue the property damage check solely in the mortgagee's name," demonstrating that Plaintiff "is not entitled to the relief it seeks."[45]

Defendant further contends that it is immaterial whether the Mortgage Clause at issue here is an open clause or a Union clause, because this distinction only "becomes relevant when the insured has violated a policy provision that would cause the insurer to deny coverage."[46] Such is not the case here, Defendant maintains, because it has not denied coverage, and indeed has "made

---

[42] *Id.* at pp. 14–15.

[43] *Id.* at p. 15.

[44] *Id.*

[45] Rec. Doc. 22 at p. 1.

[46] *Id.*

payment of sums due under the policy."[47] According to Defendant, Plaintiff's cited authority does not show that "the extent and priority of payment" must be "determined by the insurer."[48]

Furthermore, Defendant argues, it would be against Louisiana law to require it to issue a check solely to Plaintiff, because a check issued to Plaintiff alone would deprive the attorney (to whom Check 1 is also made payable[49]) of the right to payment.[50] According to Defendant, Louisiana law provides that the attorney's interest in payment trumps the interest of the loss payee.[51]

### III. Law and Analysis

#### A.   *Legal Standard: Rule 12(b)(6)*

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is called upon to "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[52] To survive dismissal pursuant to Rule 12(b)(6), the plaintiff "must plead enough facts to state a claim to relief that is plausible on its face."[53] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[54]Although

---

[47] *Id.* at pp. 1–2.

[48] *Id.* at p. 2.

[49] Rec. Doc. 1-2 at p. 1.

[50] Rec. Doc. 22 at p. 3.

[51] *Id.*

[52] *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

[53] *Id.* at 502.

[54] *Id.* at 503.

the Court accepts "all well-pleaded facts as true," and views those facts "in the light most favorable

to the plaintiff," the Court need not "accept the plaintiff's legal conclusions as true."[55]

**B.**     ***Legal Standard: Documents Attached and Referenced in the Complaint and Motion***
***Papers***

In connection with the present motion, both parties rely on certain documents attached to the

complaint and the motion papers. Plaintiff attached copies of the checks and Neely's mortgage

agreement to its complaint.[56]  Defendant attached a copy of Neely's insurance policy and related

schedules to its motion.[57] On a motion to dismiss, a district court must consider the complaint,

"documents incorporated into the complaint by reference," as well as "matters of which a court may

take judicial notice."[58] "The court may also consider documents attached to either a motion to

dismiss or an opposition to that motion when the documents are referred to in the pleadings and are

central to a plaintiff's claims."[59]

In light of these rules, this Court may consider the attached documents at issue here, with

the exception of the schedules related to the insurance policy,[60] to which Plaintiff does not refer in

its complaint. The insurance policy is attached to the instant motion.[61] That policy is identified and

discussed in Plaintiff's complaint, and is a central basis of Plaintiff's claim against Defendant,

because Plaintiff alleges that it is a payee under the policy's Mortgage Clause who has not yet been

---

[55]  *Id.*

[56]   Rec. Doc. 1-1; 1-2; 1-3.

[57]   Rec. Doc. 11-1; 11-2; 11-4.

[58]  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[59]  *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[60]  Rec. Doc. 11-3.

[61]  Rec. Doc. 11-1; Rec. Doc. 11-2; Rec. Doc. 11-3.

paid.[62] Therefore, the Court may consider the insurance policy on the present motion. Additionally, Checks 1 and 2 are attached to Plaintiff's complaint.[63] Plaintiff alleges that although Defendant issued Checks 1 and 2 in response to a claim under the insurance policy, it is entitled to the full amounts stated on each check.[64]  Therefore, these documents will be considered. Finally, Plaintiff alleges that the payees' respective interests are determined by the status of Neely's payment of the promissory notes, which are secured by the  mortgage agreement[65] attached to the complaint.[66] The Court will also consider this document.

### C.     Legal Standard: Interpretation of Insurance Contracts

The parties dispute whether, in light of the insurance policy at issue here and the applicable law, Plaintiff has stated a claim upon which relief may be granted. Although the existence and relevant language of the insurance policy itself are not themselves disputed, Defendant maintains that Plaintiff has failed to state a claim because it has no duty, under the undisputed language of the policy, to determine the parties' respective interests in the proceeds of the policy. In *Huggins v. Gerry Lane Enterprises, Inc.*, the Louisiana Supreme Court set forth the principles to be applied when interpreting insurance contracts, stating that:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

---

[62]  Rec. Doc. 1 at p. 3.

[63]  Rec. Doc. 1-2; Rec. Doc. 1-3.

[64]  *Id.* at p. 4.

[65]  Rec. Doc. 1 at pp. 3–5.

[66]  Rec. Doc. 1-1.

An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.[67]

**D.    *Analysis***

**1.    Direct Right of Action**

Considering Defendant's original motion papers and Plaintiff's memorandum in opposition, it appears that the parties initially disputed whether the Mortgage Clause contained in Defendant's insurance policy allows Plaintiff to assert a claim against it for the amounts paid in Checks 1 and 2. Defendant asserted that the Clause is a "simple or open mortgage clause," and therefore does not give Plaintiff a "separate contractual right of action" against it.[68] Plaintiff, in opposition, countered that the clause is a standard (or "Union") clause.[69] Plaintiff nonetheless argued, however, that the distinction is immaterial here, because a mortgagee has a "direct right of action" against the insurer under either type of clause, unless there is a claim that the insured violated the policy.[70] In reply, Defendant appears to concede this argument, stating that "the characterization of the [C]lause is a non-issue" unless "the insured has violated a policy provision that would cause the insurer to deny coverage."[71] Defendant now maintains that "[t]he sole issue in this case is whether, as a matter of law, [Defendant] is required to make property damage checks solely to the mortgagee . . . [or whether it is] proper to make checks payable jointly to the named insured, the insured's attorney,

---

[67]  2006-2816, 957 So.2d 127, 129 (La. 5/22/07) (citations omitted).

[68]  Rec. Doc. 11-1 at p. 6.

[69]  Rec. Doc. 17 at p. 14.

[70]  *Id.* at pp. 13–14.

[71]  Rec. Doc 22 at p. 2.

and the mortgagee."[72] Considering that Defendant and Plaintiff now agree that the characterization of the Clause is not an issue, the Court will now turn to the scope of Defendant's duty, if any, under the Clause.

### 2.      Defendant's Duty

Apart from disputing how the Clause at issue should be characterized, Defendant contends that Plaintiff has failed to state a claim against it because "it satisfied all duties owed under the policy" by issuing a check payable to Plaintiff and Neely.[73] Plaintiff counters that the Defendant failed to "allocat[e] . . . the interests in the property insured, and . . . [pay] the proceeds of the policy, according to those interests," as it was obligated to do.[74]

### a.      Defendant's Cited Authority

### i.      Insurers' Use of Joint Checks

In support of dismissal, Defendant initially cites several cases in support of the general proposition that insurers "typically" issue payments by joint check.[75]  Although these cases suggest that payment by joint check may occur without posing any problems for the insurer in certain cases, none of the cases address what, if anything, an insurer is required to do to ascertain the parties' respective interests in insurance proceeds.

First, in *River Bend Capital, LLC v. Lloyd's of London*, cited by Defendant, the Louisiana Fourth Circuit Court of Appeal noted that the claimant had settled with the insurer, and therefore

---

[72]  *Id.* at p. 1.

[73]  Rec. Doc. 11-1 at p. 6.

[74]  Rec. Doc. 17 at p. 4.

[75]  Rec. Doc. 11-1 at p. 6.

affirmed summary judgment based upon the affirmative defense of accord and satisfaction.[76] As part of the settlement agreement at issue, the insurer issued a joint check to the insured and its mortgagee, which these payees then jointly endorsed.[77] In *River Bend*, the parties did not dispute this method of payment, and the court did not address whether it was consistent with the insurer's responsibilities under the policy at issue. Therefore, the decision sheds little light on the issue presently before the Court.

Defendant also cites *J.W. Warren & Associates v. Audubon Insurance Co.*, in which the Louisiana Third Circuit Court of Appeal affirmed the district court's dismissal, on prescription grounds, of an insured's claims against his insurer and his mortgagee.[78] There, the insurance company issued a check payable to the plaintiff and the mortgagee, and mailed that check to the mortgagee.[79] Without the plaintiff's authorization, the mortgagee applied the entirety of the check to the plaintiff's outstanding debts.[80] The plaintiff, in turn, sued the insurer and the mortgagee, alleging that the insurer breached the insurance contract, and that the mortgagee breached its fiduciary duty by applying the insurance proceeds to his outstanding loans.[81] Reasoning that the action was "essentially one for the recovery of proceeds on an insurance policy," the court held that

---

[76]   2010-1317, 63 So.3d 1092, 1094 (La. App. 4 Cir. 4/13/11).

[77]   *Id.* at 1095.

[78]   93-1650, 638 So.2d 1241 (La. App. 3 Cir. 7/6/94).

[79]   *Id.*

[80]   *Id.* at 1241-2.

[81]   *Id.* at 1242.

the action was governed by a one-year prescriptive period and was untimely, as it had been filed long after the one-year period had elapsed.[82]

Although *J.W. Warren* involves a dispute regarding a mortgagee's entitlement to insurance proceeds, it does not address the insurer's role when a mortgagee and a policyholder dispute how a joint payment should be allocated. In any event, the claims in this action were dismissed as prescribed. Therefore, the case is not instructive here.

Further, Defendant cites *Brooks v. Canadian Universal Ins. Co.*, in which the Louisiana Second Circuit Court of Appeal affirmed the district court's judgment based in part upon its conclusion that the insurer properly elected to pay the insured for damage to an automobile, rather than to repair it.[83] There, the insurer issued a joint check to the plaintiff and the loss payee.[84] The plaintiff, apparently preferring that the car be "totaled," did not authorize the car's dealer to make repairs, and subsequently filed suit against the insurer.[85] It is not clear from the *Brooks* opinion whether the plaintiff and the loss payee disputed whether the plaintiff was entitled to the insurance proceeds in the first instance, and the court did not address whether the insurer was responsible for ascertaining how those proceeds should be allocated. Accordingly, the case offers little guidance here.

Defendant also cites *WPL Marine Services, Inc. v. Woods-Tucker Aircraft & Marine Leasing Corporation*, in which the parties disputed their entitlement to a portion of insurance proceeds paid

---

[82] *Id.* at 1243.

[83] 345 So.2d 963, 965 (La. App. 2 Cir. 1977).

[84] *Id.* at 964.

[85] *Id.* at 964-65.

14

to them by joint check.[86] Specifically, the plaintiff asserted that the defendant wrongfully withheld some of the proceeds, in violation of a "Bareboat Charter / Lease Agreement and Guaranty" to which both it and the defendant were parties.[87] The trial court entered judgment for the plaintiff, and the appellate court affirmed, with amendments to the judgment, based upon its interpretation of the agreement in dispute.[88]  Although this case involves a dispute regarding the allocation of insurance proceeds, the insurer was not a party, and the case turned on an agreement between payees, rather than upon the insurance policy itself. The responsibilities of the insurer do not appear to have been in dispute. Therefore, this case, like those discussed above, does not address the issue presented here.

### ii.      Insurers' Liability

Defendant also cites, and attempts to distinguish, two cases in which Louisiana courts found insurers liable for failure to comply with the payment procedures set forth in the applicable insurance contract. In *Chrysler Credit Corp. v. Louisiana Ins. Guar. Ass'n*, cited by Defendant, the Louisiana Fifth Circuit Court of Appeal held that an insurer was liable to a loss payee for its failure to include the loss payee's name on a check.[89]  In that case, the policyholder designated the plaintiff as a loss payee in her insurance policy.[90] The policyholder subsequently made a claim on that policy, and the defendant issued a check payable to the policyholder alone, whereupon the policyholder kept

---

[86]  361 So.2d 1304 (La. App. 1 Cir. 1978).

[87]  *Id.* at 1305.

[88]  *Id.* at 1306.

[89]  514 So.2d 245, 248 (La. App. 5 Cir. 1987).

[90]  *Id.* at 246-47.

the money.[91] After the policyholder declared bankruptcy, the plaintiff sued the insurer for its interests in the insurance proceeds, and obtained a judgment in its favor.[92] The appellate court affirmed, noting that the insurance policy contained a loss payable  clause that made the insurer "liable for the value of the loss to the extent of the policy limits," and obligated it to "direct payment to the designated loss payee up to the balance of the mortgage debt."[93]

Defendant contends that *Chrysler Credit* is distinguishable from the present case, because the insurer there omitted a loss payee's name from the check, whereas both Plaintiff and Neely were named on the checks at issue here. Indeed, *Chrysler Credit* holds only that an insurer must fully pay a mortgagee that is entitled to payment. It does not, however, address what party is responsible for allocating that payment, nor whether payment by joint check is sufficient where, as here, the payees dispute their entitlement to the payment pursuant to an "as interests appear" clause.

Finally, Defendant cites *Citi Mortg., Inc. v. Chase*.[94] In that case, the policyholder named the plaintiff and another entity as mortgagees in her insurance policy.[95] The policyholder  filed a claim with the insurer, but passed away before the claim was paid.[96] The policyholder subsequently paid the claim by issuing a check payable to: (1) the policyholder, (2) the other named mortgagee, and (3) "CIT," care of the insured's executor, in that order.[97] The executor took the money and failed to

---

[91] *Id.*

[92] *Id.*

[93] *Id.* at 247-48 (citations omitted).

[94] 2011-0661, 81 So.3d 255 (La. App. 4 Cir. 12/14/11).

[95] *Id.* at 256.

[96] *Id.*

[97] *Id.*

pay the mortgagees, whereupon the plaintiff mortgagee sued the executor and the insurer, alleging, among other things, that the insurer "breached its contractual and fiduciary responsibilities" under the insurance policy by issuing the check to CIT, care of the executor.[98] The defendant unsuccessfully moved for summary judgment, and asserted on appeal that the district court erred in denying its motion, because the plaintiff "failed to produce any evidence to contradict" that the defendant satisfied its duties under the policy.[99]

The Louisiana Fourth Circuit Court of Appeals affirmed the denial of summary judgment, reasoning that the check "did not follow the order of payment detailed in the policy of insurance," which required that " the order of payment will be the same as the order of precedence of the mortgages," if "more than one mortgage is named."[100]

Defendant contends that *Chase* is distinguishable from the present case, because liability in that case "was not based on the mere fact that the check was issued jointly to the named insured and the mortgagees."[101] Indeed, the court in *Chase* found a genuine issue of material fact regarding whether the insurer complied with the insurance policy based upon the insurer's failure to properly list the payees in the proper order on the check. It did not address whether the insurer was required to determine how much each payee was owed.  The mortgage clause at issue in the present case, like the mortgage clause at issue in *Chase*, contains language stating that  the "order of payment will be the same as the order of precedence of the mortgages." Here, however, Plaintiff does not argue that Defendant incorrectly stated the order of payment on the joint checks. Rather, it argues that

---

[98]  *Id.* at 257.

[99]  *Id.*

[100]  *Id.* at 259.

[101]  Rec. Doc. 11-1 at p. 9.

17

Defendant is responsible for determining how much of the proceeds should be paid to Plaintiff. Accordingly, *Chase* is distinguishable from the present case, and provides little guidance regarding whether Plaintiff has stated a claim.

### b.       Plaintiff's Cited Authority

In opposition to the instant motion, Plaintiff initially provides a dictionary definition of "ATIMA," an acronym for "as interests appear," a phrase included in the Mortgage Clause at issue here. That definition states that the phrase "is sometimes used in insurance policies to show that the named insured has an interest, usu[ally] an unspecified one, in the property covered by the policy and is entitled to benefits to the extent of that interest. The phrase is also used in the policy's mortgage clause to protect the mortgagee's real-property interest."[102] Plaintiff also cites a dictionary definition of "mortgage clause," which states, in part, that "such a clause usu[ally] provides that any insurance proceeds must be allocated between the named insured and the mortgagee 'as their interests may appear.'"[103]  Plaintiff contends that these definitions support its assertion that the instant mortgage clause "require[s] an allocation of the interests in the property insured, and a payment of the proceeds of the policy, according to those interests."[104]

As noted above, the Louisiana Supreme Court instructs that "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning."[105] Here, both parties acknowledge that the

---

[102] BLACK'S LAW DICTIONARY (10th Ed. 2014).

[103] *Id.*

[104] Rec. Doc. 17 at p. 4.

[105] *Huggins*, 957 So.2d at 129.

Mortgage Clause contains an ATIMA provision. If the above-quoted dictionary definitions are representative of the "generally prevailing meaning" of ATIMA, then the presence of an ATIMA provision in the instant Mortgage Clause suggests that Plaintiff is entitled to a share of payment under the policy commensurate with its interests. Plaintiff further contends, however, that the ATIMA provision here would be meaningless if it only required Defendant to issue a joint check to all payees, rather than determine how the payees' interests actually appear.[106]

Plaintiff also quotes COUCH ON INSURANCE, a national insurance law treatise, in support of the propositions that: (1) a mortgagee may "recover the whole amount . . . [of a payment] in his or her own name, if the mortgage debt exceeds the loss;" and (2) where the amounts due on the policy are disputed, it is "incumbent on the insurer to either seek an accounting of the monies owed, or a verification and acceptance by the mortgagor and mortgagee."[107] Although this second point supports Plaintiff's assertion that Defendant was obligated to ascertain the amounts due to each payee, the treatise cites no Louisiana authority on point.[108]

---

[106] Rec. Doc. 17 at pp. 4–5.

[107] STEVEN PLITT, DANIEL MALDONADO, *ET AL.* 4 COUCH ON INSURANCE § 65:17 (3d Ed. 2014). Plaintiff also cites a Louisiana treatise which generically describes the characteristics of mortgage clauses. WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON III, 15 LA. CIV. L. TREATISE, INSURANCE LAW & PRACTICE § 10:220 (4th Ed. 2014) ("If a policy is procured by and issued to the owner of the property, the method chosen to reflect the creditor's interest in the property is usually to include a 'loss payee' or 'loss payable' clause in the policy. This clause contains language noting the identity of the creditor and providing that the amounts payable under the policy upon occurrence of the insured risk are payable to the insured and the creditor 'as interest may appear' or some similar phrase. This is a recognition of the nature of most security arrangements, in which the interest of the insured owner is increasing gradually as he makes his payments of principal and the interest of the creditor and holder of the security interest is decreasing at the same rate. Thus it is impossible to fix their respective interests in advance, requiring the statement that the payment be made as their interests respectively appear at the time of loss.").

[108] Plaintiff also quotes a Louisiana treatise that describes, in general terms, the use of loss payee clauses. *See* Rec. Doc. 17 at pp. 7–8.

However, Plaintiff cites *Durbin v. Allstate Ins. Co.*, in which the Louisiana Second Circuit Court of Appeal noted that:

> It is well established as the law of Louisiana that where insurance is taken out by the mortgagor for the benefit of mortgagee, or is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt for the benefit of the mortgagor.[109]

Based upon this language, it appears that *Durbin* supports the proposition that a mortgagee is entitled to its rightful share of insurance proceeds where, as here, the insurance policy at issue is payable to the mortgagee and the policyholder "as interests may appear." Although the decision does not set forth what the insurer is obligated to do in the event of a dispute between the mortgagee and the policyholder, the decision nonetheless suggests that the relevant inquiry is not whether the insurer attempted to pay the mortgagee in accordance with its interests, but whether the mortgagee was actually paid. [110]

Consistent with this reading is *Toups Marine Transport, Inc. v. Zurich Ins. Co.*,[111] also cited by Plaintiff. In *Toups,* a district court in the Eastern District of Louisiana observed, citing *Durbin,* that Louisiana law provides that "where a mortgagor takes out insurance to pay the mortgagee as its interest may appear, the proceeds are paid first to the mortgagee and the excess is then for the

---

[109]  267 So.2d 779, 781 (La. App. 2 Cir. 1972) (citing *Adams v. Allen*, 19 So.2d 578, 580  (La. App. 1 Cir. 1944)).

[110]  In addition to *Durbin*, Plaintiff cites  *White System of Alexandra v. Merchant's Fire Assur. Corp. of N.Y.*, 53 So.2d 697 (La. App. 2 Cir. 1951), a case in which the Louisiana Second Circuit Court of Appeal held that a loss payee clause containing an ATIMA provision "virtually [made] the mortgagee an insured in equal status to the [policyholder]," and thereby permitted the mortgagee to assert a cause of action against the insurer. The parties in *White System* did not raise the issue of whether the insurer could discharge its obligations under a loss payee clause issuing a joint check to the policyholder and the mortgagee—indeed, the insurer in that case denied the underlying insurance claim—and the court, having no reason to address that issue, did not do so.

[111]  636 F.Supp. 847, 849 (E.D. La. 1986) (Schwartz, J.).

benefit of the mortgagor."[112] This decision's reading of *Durbin* suggests that an insurer is required to make payments according to the parties' respective interests.

Finally, Plaintiff cites, without explanation, *American General Fire & Cas. Co. v. Reese*[113] and *Hurtado v. Riverside Court Condominium Ass'n Phase II, Inc.*,[114] decisions from the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Eastern District of Louisiana, respectively. In *Reese*, the court, citing *Durbin*, noted that "the general law in Louisiana is that where an insurance policy is taken out by a mortgagor for the benefit of a mortgagee, the mortgagee is entitled to the proceeds of the policy to the extent of the mortgage debt due at the time of loss."[115] The court then proceeded to consider a more specific issue: whether Louisiana law supported reforming an insurance contract for the benefit of a previously unnamed mortgagee.[116] In *Hurtado*, the court, quoting *Durbin*, held that an insurer's settlement agreement properly provided for payment to a mortgagee, pursuant to the loss payee clause in the applicable insurance policy.[117] Although both cases cite *Durbin*, neither case addresses the issue presented here.

---

[112]  *Id.* at 849.

[113]  853 F.2d 370 (5th Cir. 1988).

[114]  No. 07-8671, 2009 WL 3614435 (E.D. La. Oct. 29, 2009).

[115]  853 F.2d at 373.

[116]  *Id.*

[117]  2009 WL 3614435 at *2 ("The Plaintiffs' insurance policy named Wells Fargo as a mortgagee and required that any loss payable be paid to the Plaintiffs and the mortgagee. Further, Louisiana law required Wells Fargo to be named as a loss payee. 'It is well established as the law of Louisiana that where insurance is taken out by the mortgagor for the benefit of mortgagee, or is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt for the benefit of the mortgagor.'").

### c.       Plaintiff's Claim

In the instant motion, Defendant asserts that, as a matter of law, it has "satisfied all duties" it owed under the insurance policy by paying the proceeds in dispute to Plaintiff and to Neely by joint check.[118] Plaintiff appears to agree that "[t]he basic facts in this case do not appear to be in dispute,"[119] but counters that Defendant has not discharged its duties under the policy, because the payees cannot agree on how the proceeds are to be distributed, and therefore refuse to endorse the check.[120] In these circumstances, Plaintiff asserts, no payment has been made, because the two checks issued by Defendant are "essentially worthless."[121]

Neither party cites a case directly addressing whether an insurer may satisfy its obligation to proceeds "as interests appear" by issuing a joint check to two parties who dispute their respective entitlement to the proceeds. Rather, Defendant's cited cases support the propositions that: (1) payment by joint check does not always provoke litigation against the insurer;[122] and (2) an insurer's failure to pay proceeds according to the terms of the policy may expose it to liability.[123]

Plaintiff's cited authority, however, suggests that where, as here, an insurance policy contains an ATIMA provision, a mortgagee may state a claim for recovery of insurance proceeds if the mortgagee has not been paid in accordance with its interests. Specifically, the Louisiana

---

[118]   Rec. Doc. 11-1 at p. 6; Rec. Doc. 22 at p. 1.

[119]   Rec. Doc. 17 at p. 2.

[120]   Rec. Doc. 17 at pp. 14–15.

[121]   *Id.* at p. 2.

[122]   *See River Bend Capital,* 63 So.3d at 1094-95; *J.W. Warren,* 638 So.2d at 1241-42; *Brooks,* 345 So.2d at 964-65; *WPL Marine Services,* 361 So.2d at 1304-05.

[123]   *Chrysler Credit,* 514 So.2d at 247-48; *Chase,* 81 So.3d at 259.

Second Circuit Court of Appeal's *Durbin* decision  instructs that where, as here, "insurance . . . is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt for the benefit of the mortgagor."[124] Accordingly, the determinative question appears to be whether the mortgagee has actually been paid in accordance with its interests, rather than whether the insurer has unsuccessfully attempted to make payment to rival payees.

This interpretation is consistent with the plain language of the Mortgage Clause at issue here.[125] As noted above, the Clause states, in part, that "[i]f a mortgagee is named in this policy, any loss payable . . . will be paid to the mortgagee and you, as interests appear."[126] This provision does not address attempted, but unsuccessful, payment. Rather, under this provision, Defendant is obligated to actually make payment to Plaintiff in accordance with its interests. Therefore, if Defendant attempts to make payment, but this attempt is unsuccessful, then Defendant, as the insurer, has not discharged its obligations under the policy.[127]

In light of this language, and in light of *Durbin* and other Louisiana decisions, it appears that Plaintiff has stated a claim for the proceeds. Specifically, Plaintiff alleges that Neely owes it the full

---

[124] *See* 267 So.2d at 781. *See also Adams,* 19 So.2d at  580 ("[I]t is now well established, without the necessity of citing authorities, that where insurance . . . is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus if any, after the extinguishment of his debt, for the benefit of the mortgagor."). As noted above, federal courts have also applied *Durbin*.

[125] *See Huggins*, 957 So.2d at 129 ("Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.").

[126] Rec. Doc. 11-2 at p. 36. *See also* Rec. Doc. 11-1 at p. 2 (quoting same); Rec. Doc. 17 at p. 1 (quoting same).

[127] Defendant contends that it is "illogical" to require it to ascertain payees' respective interests in insurance proceeds, because it "is not in a position to determine the exact amount due on the mortgage and to decide whether the check is payable to one or both and in what amounts." Rec. Doc. 11-1. To decide the instant motion, which involves a claim for proceeds paid in two checks pursuant to a single insurance policy, the Court need not address whether an insurer generally must do more than  Defendant did here. Rather, pursuant to *Durbin* and in light of the plain language of the Mortgage Clause, it is only necessary to consider whether Plaintiff here has plausibly alleged that it has not been paid as its interests appear.

amounts stated on Checks 1 and 2, making those amounts "properly payable" to it, rather than to Neely.[128] Plaintiff further alleges that it is a loss payee/mortgagee under the policy issued by Defendant, and is therefore entitled to judgment against Defendant for these amounts.[129] Therefore, Plaintiff has alleged both its entitlement to the proceeds and Defendant's failure to pay those proceeds in accordance with Plaintiff's interests. Taking these factual allegations as true, Plaintiff has plausibly stated a claim for the proceeds.[130]

---

[128] Rec. Doc. 1 at pp. 4–5.

[129] *Id.* at p. 5.

[130] In reply, Defendant argues, for the first time, that requiring it to "issue a check solely to [Plaintiff]" would be "against Louisiana law," because such a check would not account for attorney's fees owed. Rec. Doc. 22 at p. 3. As noted above, however, the determinative question for purposes of the instant motion is whether Plaintiff has plausibly alleged that it has not yet been paid its share of the proceeds in accordance with the terms of the Mortgage Clause. Plaintiff alleges in its complaint that it is entitled to the full amount of the proceeds due under the policy, and in deciding the instant 12(b)(6) motion, this Court takes Plaintiff's factual allegations as true. To the extent that factual disputes may exist regarding the amount of proceeds to which Plaintiff is entitled, those disputes not properly before the Court on this 12(b)(6) motion. Defendant also contends that it had previously paid Plaintiff and Neely by joint check without provoking a dispute, raising the question of why the checks at issue here are deemed "worthless" by Plaintiff. Rec. Doc. 22 at p. 4. On this 12(b)(6) motion, however, this Court takes as true Plaintiff's assertion that it has not yet been paid in accordance with its interests under the policy.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant Scottsdale Insurance Company's pending "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)"[131] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this <u>27th</u> day of May, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[131] Rec. Doc. 11.