## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FIRST BANK AND TRUST**                    **CIVIL ACTION**

**VERSUS**                                  **NO. 14-2017**

**SCOTTSDALE INSURANCE COMPANY**            **SECTION: "G"(1)**

## ORDER

In this litigation, Plaintiff and Defendant-in-Interpleader First Bank and Trust ("First Bank") alleges that it is entitled to money due under Defendant-in-Interpleader Edward Neely's ("Neely") insurance policy with Defendant and Plaintiff-in-Interpleader Scottsdale Insurance Company ("Scottsdale").[1] First Bank asserts that, because money is due under the policy for damage to the insured property, and because First Bank's interest in the insured property as a mortgagee is superior to that of Neely, under the terms of the policy, the money due is properly payable to First Bank.[2] Pending before the Court is Scottsdale's "Motion for Summary Judgment."[3] Having reviewed the motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant the motion in part and deny it in part.

## I. Background

### A.    *Factual Background*

In its complaint, First Bank alleges that Scottsdale issued an insurance policy to Edward Neely covering seven properties in New Orleans ("Insured Properties").[4] First Bank contends that

---

[1] Rec. Doc. 1.

[2] *Id.* at p. 4.

[3] Rec. Doc. 69.

[4] Rec. Doc. 1 at pp. 2–3.

Scottsdale's insurance policy designates it as the loss payee / mortgagee.[5] First Bank maintains that Neely is obligated to it, and granted it a multiple indebtedness mortgage on the insured properties to secure his obligation.[6] According to First Bank, Edward Neely and Sheryl Neely executed two promissory notes to it on January 29, 2008: a note for $977,600 and a note for $465,000.[7] Both notes, First Bank asserts, are secured by the mortgage upon the insured properties; principal amounts of $994,247.92 and $182,015.54, plus additional amounts, remain due on the notes.[8]

First Bank alleges that Scottsdale tendered two checks to Neely in connection with damage to the insured properties, including a check in the amount of $89,750, dated June 30, 2014 ("Check 1"), made payable to Neely, Binegar Christian, LLC, and First Bank and a check in the amount of $16,978.70, dated August 18, 2014 ("Check 2"), made payable to Neely and First Bank, both of which First Bank possessed at the time it filed its complaint.[9] First Bank asserts that the terms of Scottsdale's insurance policy with Neely entitle First Bank to the amounts due under the policy, since its interest in the mortgage is superior to Neely's.[10] First Bank contends that, as the loss payee/mortgagee, it is entitled to the proceeds of the checks plus legal interest from the date of the filing of its original complaint.[11]

---

[5] *Id.* at p. 3.

[6] *Id.*

[7] *Id.* Edward Neely and Sheryl Neely executed Note 1. Edward Neely executed Note 2. First Bank contends that the amount of Note 2 was subsequently changed to $468,922.25. *Id.*

[8] Rec. Doc. 54 at pp. 4–5.

[9] Rec. Doc. 1 at p. 4. According to First Bank, it received the checks from counsel for Neely. Rec. Doc. 70 at p. 16.

[10] *Id.*

[11] Rec. Doc. 54 at pp. 6–7.

**B.      Procedural Background**

First Bank  filed a complaint with this Court on September 4, 2014.[12] The matter was initially assigned to Section "A" of this Court, but Section "A" entered an "Order of Recusal"[13] on September 8, 2014, causing the matter to be reassigned to this Section, Section "G."[14] On September 9, 2014, First Bank filed an *ex parte* "Motion to Deposit Original Checks for Safekeeping."[15] The Court granted First Bank's *ex parte* motion on September 10, 2014, causing Checks 1 and 2 to be deposited with the Clerk of Court pending the resolution of this matter.[16] On December 11, 2014, Scottsdale filed a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)."[17]

On May 1, 2015, First Bank and Trust filed a "Motion for Summary Judgment."[18] On May 27, 2015, the Court denied Scottsdale's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)."[19] The same day, Scottsdale requested and was granted leave of Court to file a "Third Party Complaint and Cross Claim for Interpleader,"[20] in which it listed as defendants-in-interpleader First Bank, Neely, and Binegar Christian, LLC.

On August 4, 2015, Scottsdale filed a "Rule 67 Motion for Leave to Withdraw Negotiable

---

[12] Rec. Doc. 1.

[13] Rec. Doc. 5.

[14] A previous Order in this case incorrectly stated that the case had originally been assigned to Section "J." Rec. Doc. 49 at p. 3.

[15] Rec. Doc. 6.

[16] Rec. Doc. 7.

[17] Rec. Doc. 11.

[18] Rec. Doc. 29.

[19] Rec. Doc. 49.

[20] Rec. Doc. 50.

Instruments and to Deposit Funds."[21]

Scottsdale filed its own "Motion for Summary Judgment"[22] on August 25, 2015. First Bank filed an opposition to the motion for summary judgment on September 8, 2015.[23] On September 16, 2015, with leave of Court, Scottsdale filed a reply memorandum.[24] On September 21, 2015, with leave of Court, First Bank filed a surreply.[25] Pursuant to Local Rule 7.5, opposition to a motion must be filed eight days before the noticed submission date. The instant motion was set for submission on September 16, 2015. Neither Neely nor Binegar Christian, LLC, have responded to the motion for summary judgment, timely or otherwise.

On September 14, 2015, Scottsdale filed a "Motion to Strike,"[26] requesting that the Court strike a document attached as Exhibit A to First Bank's memorandum in opposition to the motion for summary judgment.[27] According to First Bank, the document Scottsdale sought to be stricken was the copy of the backs of checks currently being held by the Clerk of Court.[28] The Court converted the motion to an objection and held that "[b]ecause the authenticity of the actual checks filed into the registry of the Court is not disputed, the Court will examine them and disregard any

---

[21] Rec. Doc. 67.

[22] Rec. Doc. 69.

[23] Rec. Doc. 70.

[24] Rec. Doc. 83.

[25] Rec. Doc. 90.

[26] Rec. Doc. 73.

[27] Rec. Doc. 71.

[28] Rec. Doc. 76 at p. 2.

copies submitted into the record."[29]

## II. Parties' Arguments

**A.**      ***Scottsdale's Arguments in Support of its Motion for Summary Judgment***

In Scottsdale's "Motion for Summary Judgment,"[30] it moves for an order: (1) holding that the interpleader action filed on May 27, 2015 is proper; (2) dismissing Scottsdale as a disinterested stakeholder; (3) enjoining First Bank, Neely, and Binegar Christian, LLC from filing any other action against Scottsdale regarding the negotiable instruments at issue in this case and/or any amounts or proceeds listed on such negotiable instruments; (4) denying First Bank's claim for judicial interest; and (5) granting Scottsdale attorney's fees associated with this case.

First, Scottsdale asserts that the three prerequisites to sustain an action for interpleader pursuant to Federal Rule of Civil Procedure 22 have been met: (1) that the amount in controversy exceeds $75,000; (2) there is complete diversity of citizenship; and (3) the plaintiff-in-interpleader is exposed to multiple liability.[31] Scottsdale asserts that the amount in controversy is $106,728.70, the parties are completely diverse, and all three defendants-in-interpleader have made claims for the proceeds of the two checks issued by Scottsdale and are listed as payees on the checks.[32]

Second, Scottsdale contends that it should be dismissed as a disinterested stakeholder, the requirements of which are that: (1) the amount at issue is deposited into the registry of the Court; (2) the stakeholder disavows any interest in the funds; and 3) there is no material controversy

---

[29] Rec. Doc. 87.

[30] Rec. Doc. 69.

[31] Rec. Doc. 69-1 at p. 5.

[32] *Id.*

5

involving the stakeholder.[33] Scottsdale avers that it has sought leave of Court to deposit the funds into the Court's registry, it has made no claims to the funds since the checks were issued, and there is no material controversy involving Scottsdale because it met its duty under Louisiana law to First Bank, Neely, and Binegar Christian, LLC upon the original issuance of the checks.[34] Quoting Louisiana Revised Statute § 10:3-310(b), Scottsdale asserts that when "an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken."[35] Scottsdale maintains that the suspension "continues until dishonor of the check or until it is paid or certified" and that the obligation is not enforceable during that time.[36] Citing *Deutsche Bank National Trust Co. v. Regions Bank*,[37] a case from another section of the Eastern District of Louisiana, Scottsdale asserts that a check issued to the named insured and the mortgagee has been found to be proper in Louisiana federal courts and is proper under the terms of the policy.[38] Scottsdale avers that its obligation will be discharged when the funds are deposited into the registry of the Court.[39]

Third, Scottsdale asserts that any claims by First Bank against Scottsdale should be

---

[33] *Id.* at p. 6 (citing *Lexington Ins. Co. v. Guidos*, No. 11-644, 2011 WL 3819664 (E.D. La. Aug. 29, 2011) (Vance, C.J.).

[34] *Id.* at pp. 6–7.

[35] *Id.* at p. 7.

[36] *Id.* (quoting La. Rev. Stat. § 10:3-310(b)(1)).

[37] No. 12-2436, 2013 WL 192993 (E.D. La. Jan. 16, 2013) (Lemelle, J.).

[38] Rec. Doc. 69-1 at p. 7.

[39] *Id.* at pp. 8–9  (citing La. Civ. Code art. 1869; *Cajun Elec. Power Co-op, Inc. v. Riley Stoker Corp.*, 901 F.2d 441 (5th Cir. 1990)).

dismissed and enjoined in light of the interpleader action.[40]

Fourth, Scottsdale contends that First Bank's claim for judicial interest should be dismissed.[41] Scottsdale asserts that the Fifth Circuit has awarded interest against a stakeholder in an interpleader action only when the stakeholder "makes use of the money while it is in his possession, for the reason that a contrary rule would permit a person with no claim to a sum of money to enjoy a greater benefit from its possession than a person who makes such a claim, when the claim is later adjudged inferior to that of another person."[42] Scottsdale avers that it did not owe interest to First Bank while the obligation was suspended by payment of the check and that any interest was terminated by the deposit of the funds into the registry of the Court.[43] Furthermore, Scottsdale asserts that it was First Bank who had access to the funds at issue because Neely and Binegar Christian, LLC state that they endorsed the checks and delivered them to First Bank.[44]

Fifth, Scottsdale contends that it is entitled to attorney's fees.[45] Quoting this Court's opinion in *American General Life Insurance Co. v. Gibson*,[46] Scottsdale asserts that "[a] district court has the authority to award reasonable attorney's fees in interpleader actions. The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a

---

[40] *Id.* at pp. 9–10.

[41] *Id.* at p. 10.

[42] Rec. Doc. 69-1 at p. 10 (quoting *Phillips Petrol. Co. v. Adams*, 513 F.2d 355, 369 (5th Cir. 1975)).

[43] *Id.*

[44] *Id.* at p. 11.

[45] *Id.*

[46] No. 13-5069, 2015 WL 280321, at *13 (E.D. La. Jan. 21, 2015) (Brown, J.).

disinterested stakeholder, and is not in substantial controversy with one of the claimants."[47] Scottsdale contends that attorney's fees are proper in this case because "First Bank [has] made misrepresentations to this Court since inception of the suit; has no valid cause of action against Scottsdale; and, per the allegations of Neely and Binegar [Christian, LLC], use[d] this suit as a vehicle to avoid the jurisdiction of the state district court."[48]

### B.    First Bank's Arguments in Opposition

In its opposition, First Bank incorporates by reference the "Unsworn Declaration Under Penalty of Perjury"[49] of First Bank's Vice President, James R. Noel ("Noel") in which Noel explains the terms and conditions of the promissory notes executed by Edward and Sheryl Neely.[50] First Bank also incorporates by reference the exhibits attached to Noel's Declaration which include Promissory Note 1, Change in Terms Agreement for Note 1, a Power of Attorney, a Forbearance Agreement, Promissory Note 2, Change in Terms Agreement, Mortgage 1, Mortgage 2, "Partial Dation en Paiement," Check 1, and Check 2.[51]

First Bank first contests Scottsdale's representation of itself as a disinterested stakeholder.[52] According to First Bank, Scottsdale began its defense of the litigation with a motion to dismiss First Bank's claims, despite First Bank's urging to consider the interpleader option.[53] Next, First Bank

---

[47] Rec. Doc. 69-1 at p. 11.

[48] *Id.*

[49] Rec. Doc. 29-4.

[50] Rec. Doc. 70 at p. 1.

[51] Rec. Docs. 29-5–29-15.

[52] Rec. Doc. 70 at p. 1.

[53] *Id.* at p. 2.

asserts that Scottsdale has misrepresented to the Court that the checks were sent to First Bank's counsel based on some agreement between Neely and First Bank to deposit the checks into the registry of the Civil District Court.[54] First Bank maintains that when counsel for First Bank received the first check, it was not endorsed by anyone, nor was the second check it received endorsed by anyone.[55]

First Bank contends that Scottsdale is not entitled to be dismissed until the money is deposited into the registry of the Court and if it does not deposit the funds, it must be available to stand in judgment for those funds.[56] First Bank agrees, however, that Scottsdale has the right to seek interpleader and that once Scottsdale deposits the disputed funds into the registry of the Court, it is entitled to dismissal from the action and to an injunction, to the extent Scottsdale believes that an injunction is necessary.[57]

First Bank also contends that Scottsdale should be required to pay interest in the sum of $4,280.84, calculated at the Louisiana legal rate of 4% per year.[58] According to First Bank, "the issue of insurance companies failing to timely dispossess themselves of proceeds of policies has always been a problem."[59] First Bank asserts that it is seeking legal interest from the date formal

---

[54] *Id.* First Bank notes that Scottsdale has not submitted any summary judgment evidence in support of its allegations and that First Bank has also submitted no summary judgment evidence as these allegations are not relevant to the issue before the Court on the motion for summary judgment. *Id.*

[55] *Id.* at pp. 2–3.

[56] *Id.* at p. 7.

[57] *Id.* at p. 8.

[58] *Id.*

[59] *Id.* at p. 9.

judicial demand was made to Scottsdale to pay the amount of the checks to First Bank.[60] First Bank contends that Scottsdale failed to initiate an interpleader action or deposit its funds into the registry of the Court.[61] Furthermore, First Bank avers that Scottsdale "was called upon to honor its contractual commitment to pay the proceeds 'as interests may appear'" when it was advised that the checks it issued could not be deposited because the parties could not agree on how to distribute the amounts.[62] First Bank contends that it could not legally deposit the checks without Neely's endorsement which Neely was not willing to give.[63]

In response to Scottsdale's argument pursuant to Louisiana Revised Statute § 10:3-310(b) that the underlying obligation against it is suspended until the checks are certified or dishonored, First Bank directs the Court's attention to Louisiana Revised Statute § 10:3-110(d).[64] First Bank contends that the statute provides:

> [i]f an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.[65]

First Bank asserts that, in order to deposit the check, First Bank "would have had to obtain the endorsement of all of the payees of the checks, forged the missing endorsements, or deposited the

---

[60] *Id.* at p. 13.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at p. 14.

[65] La. Rev. Stat. § 10:3-110(d).

checks without the endorsements of the missing payees."[66] According to First Bank, Scottsdale would have First Bank commit the crime of forgery or the tort of conversion, violate the presentment warranties of Louisiana Revised Statute 10:3-417 and Louisiana Revised Statute 10:4-208, or violate the transfer warranties of Louisiana Revised Statute 10:4-207.[67]

First Bank also contends that Louisiana Revised Statute 10:3-310(b), cited by Scottsdale, which provides that "if a note or an uncertified check is taken for an obligation, the obligation is suspended," does not apply in this case.[68] First Bank asserts that it did not "take" Scottsdale's checks for the obligation Scottsdale owed to First Bank but rather received the check as a result of a settlement agreement that Neely and Scottsdale has negotiated without First Bank's knowledge.[69] According to First Bank, the check was not payable to alternative payees and therefore could only be negotiated, discharged, or enforced by all of the payees.[70] First Bank asserts that there is no indication in this case that First Bank agreed to accept Scottsdale's checks in payment of its obligation.[71] Citing *ViewPoint Bank v. Allied Property & Casualty Insurance Co.*, a Texas Court of Appeals case and *Versai Management Corp. v. Citizens First Bank*, an Eastern District of Michigan case, First Bank contends that although Neely and Binegar Christian, LLC accepted the checks in this form, their acceptance cannot be imputed to First Bank.[72] First Bank additionally asserts that

---

[66] Rec. Doc. 70 at p. 14.

[67] *Id.* at pp. 14–15.

[68] *Id.* at p. 15.

[69] *Id.*

[70] *Id.*

[71] *Id.* at p. 17.

[72] *Id.* at pp. 17–18 (citing *ViewPoint Bank v. Allied Prop. & Cas. Ins. Co.*, 439 S.W.3d. 626 (Tex. App. 2014); *Versai Mgmt. Corp. v. Citizens First Bank*, 08-15129, 2010 WL 1417798 (E.D. Mich. Apr. 5, 2010)).

"the concept of delivery of one joint payee being delivery to all is simply not relevant, when one of the multiple payees rejects the form of payment and sues to enforce the obligation."[73] According to First Bank, allowing Scottsdale to suspend its obligation to pay interest on checks it has known for a year were in the physical possession of the clerk of this Court would mean that it has no obligation to pay anyone as long as the checks remain undeposited.[74]

First Bank asserts that the situation in this case is not one the statute cited by Scottsdale was designed to cover.[75] First Bank contends that each payee of the check has to authorize that a check be accepted in lieu of cash to pay the obligation due to him before the check can be said to have been received for an obligation.[76] First Bank contends that a tender must be unconditional and that it has never actually received any tender because the tender was made only to Neely, without any consultation with First Bank.[77] According to First Bank, in order for there to have been a valid tender, Scottsdale would have had to tender the full amount of both checks to First Bank alone, unconditionally.[78]

In response to Scottsdale's argument that interest should not be awarded because it has initiated an interpleader action, First Bank asserts that interest stops accruing when there is a deposit into the registry of the court.[79] Citing Louisiana Civil Code article 2000, First Bank asserts that

---

[73] *Id.* at p. 18.

[74] *Id.*

[75] *Id.* at p. 19.

[76] *Id.*

[77] *Id.* at p. 20.

[78] *Id.*

[79] *Id.* (citing *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410 (5th Cir. 2011)).

interest is due on Scottsdale's obligation to pay money and that Louisiana Revised Statute 9:3500 has set a rate for interest at 4% per year.[80] First Bank asserts, however, that to the extent that Neely and Binegar Christian, LLC agreed to accept the checks and to the extent the Court determines they are entitled to any portion of the interpleader funds, Scottsdale should be able to reclaim that interest.[81]

Finally, First Bank contends that because Scottsdale has not acted as a disinterested stakeholder in this action, it is not entitled to attorney's fees.[82] In support, First Bank asserts that Scottsdale has resisted paying anything to First Bank and has still not paid any money into the registry of the Court.[83]

## C.   *Scottsdale's Arguments in Further Support of its Motion*

Scottsdale contends that because First Bank agrees that interpleader is proper and that Scottsdale should be dismissed as a disinterested stakeholder, the only remaining issues for the Court's consideration are: (1) whether Scottsdale must pay interest; and (2) whether Scottsdale is entitled to attorney's fees as a disinterested stakeholder.[84]

Scottsdale asserts that pursuant to Local Rule 67.2, an order signed by the presiding judge is required for money to be sent to the Court or its officers for deposit in the Court registry.[85] Therefore, Scottsdale contends that any suggestion by First Bank that Scottsdale is improperly

---

[80] *Id.* at p. 21.

[81] *Id.* at p. 22.

[82] *Id.* at p. 23.

[83] *Id.*

[84] Rec. Doc. 83 at p. 1.

[85] *Id.* at p. 2.

withholding funds is without support as Scottsdale has sought leave of this Court to deposit the funds at issue.[86]

Scottsdale contends that it does not owe any interest because it fully performed its obligation to Neely and First Bank under Louisiana law.[87] Citing Louisiana Revised Statute § 10:3-310(b), Scottsdale asserts that under Louisiana law, a payment by an uncertified check will suspend an obligation.[88] In response to First Bank's argument that the statute does not apply because First Bank did not agree to accept payment in the form of a check, Scottsdale asserts that neither the statute nor Louisiana jurisprudence define the term "take" as used in the statute.[89] Furthermore, Scottsdale asserts that the comments to Louisiana Revised Statute § 10:3-420 state "[i]f a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees."[90] In support, Scottsdale also cites Louisiana Civil Code articles 1790 and 1791 which state that when a single obligor owes an obligation to multiple obligees, performance to one obligee is considered performance to all.[91]

Scottsdale also cites *Deutsche Bank National Trust Company v. Regions Bank,*[92] a case from another section of the Eastern District of Louisiana, asserting that, in that case, the court held an insurer's obligation under its policy was discharged pursuant to Louisiana Revised Statute 10:3-

---

[86] *Id.*

[87] *Id.* at p. 3.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] No. 12-2436, 2013 WL 192993 (E.D. La. Jan. 17, 2013) (Lemelle, J.).

310(b) through its issuance of a check to the named insured and the mortgage holder, along with delivery of the check to the named insured.[93] Scottsdale contends that the only difference in this case is that the check was not cashed and therefore the debt is only suspended, not discharged.[94] Scottsdale also contends that the cases cited by First Bank from Texas and Michigan do not address Louisiana law and provide no guidance for the Court to make its *Erie* guess.[95] Therefore, it asserts *Deutsche Bank National Trust Company* is the only case cited by either party which is on point.[96]

In response to First Bank's argument that interest is owed pursuant to Louisiana Civil Code article 2000, which provides for payment of interest if there is a delay in performance, Scottsdale asserts that the argument raises the question of "whether when Scottsdale issued the checks to Neely and First Bank it made a payment or rendered performance under the contract."[97] Scottsdale asserts that the answer is yes.[98]

Scottsdale also asserts that it does not owe any interest as the plaintiff-in-interpleader.[99] Scottsdale contends that although plaintiffs-in-interpleader are generally charged judicial interest when they do not deposit the disputed funds into the registry of the court, courts in this circuit have held that plaintiff in interpleader should not be charged if they are unable to deposit the money

---

[93] Rec. Doc. 83 at p. 4.

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at pp. 4–5.

[98] *Id.* at p. 5.

[99] *Id.*

through no fault of their own or when a delay in making the deposit is reasonable.[100] Scottsdale contends that any delay in the deposit of funds in this case is reasonable and through no fault of Scottsdale.[101] According to Scottsdale, it was hauled into court by First Bank to defend its payment to First Bank and Neely and then sought permission of the Court to deposit the funds into the Court's registry.[102]

Turning to Scottsdale's request for attorney's fees, Scottsdale reiterates its arguments in its motion for summary judgment that it is not in any substantial controversy with First Bank, Neely, or Binegar Christian, LLC.[103]

### D.    First Bank's Surreply

First Bank asserts first that the Court can take judicial notice of the checks at issue in this case and can see that the checks bear no endorsement.[104]

In response to Scottsdale's contention that the cases cited by First Bank are not probative of Louisiana law, First Bank contends that "in construing the provisions of the Uniform Commercial Code, the Louisiana Supreme Court has instructed that it is not only proper, but required, that Louisiana courts look to cases decided in other states, so that the provisions of the Uniform Commercial Code can be uniformly applied."[105] First Bank contends that in *ViewPoint Bank v.*

---

[100] *Id.* (citing *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 73 F. Supp. 3d 680 (N.D. Miss. 2014)).

[101] *Id.*

[102] *Id.* at pp. 5–6.

[103] *Id.* at p. 6.

[104] Rec. Doc. 90 at p. 1.

[105] *Id.* at p. 2 (citing *Specialized Loan Servicing, LLC v. January*, 2012-2668, p. 13 (La. 6/2/13); 119 So. 3d 582, 590; *First Nat'l Bank of Picayune v. Pearl River Fabricators, Inc.*, 06-2195, p. 20 (La. 11/16/07); 971 So. 2d 302, 315; *Cromwell v. Commerce & Energy Bank of Lafayette*, 464 So. 2d 721, 730 (La. 1985)).

*Allied Property and Casualty Insurance Company*, a Texas Court of Appeals case, the insurer argued that by issuing a check jointly to both the insured and the loss payee, it had discharged its obligation to both payees and despite the fact that the insured endorsed the check and stole the proceeds, the mortgagee had no further claim against the insured.[106] According to First Bank, the Texas Court of Appeals held that it takes the action of all joint payees to act in regards to an instrument if the joint payees are not alternative payees and therefore the insurer's obligation had not been discharged by the deposit of the check by only one of the payees.[107]

First Bank also cites *Versai Management Corp. v. Citizens First Bank*,[108] a case from the Eastern District of Michigan in which First Bank asserts checks were issued to the named insured, two mortgagees, and the public adjuster that assisted the named insured in presenting its case to the insurers.[109] First Bank contends that the endorsement of the named insured and the two mortgagees were forged, and the checks were deposited in the account of the public adjuster.[110] According to First Bank, the court held that the forged endorsements were ineffective and because the action of all four joint payees was needed to negotiate the checks, there had been a conversion.[111] First Bank avers that these cases support its contention that payees cannot bind another payee who does not join in a particular action relating to a check if the payees are not alternative payees.[112]

---

[106] Rec. Doc. 90 at pp. 2–3 (citing *ViewPoint Bank v. Allied Prop. and Cas. Ins. Co.*, 439 S.W.3d 626 (Tex. App. 2014)).

[107] *Id.* at p. 3.

[108] 08-15129, 2010 WL 1417798 (E.D. Mich. Apr. 5, 2010).

[109] Rec. Doc. 90 at p. 3.

[110] *Id.*

[111] *Id.* at p. 4.

[112] *Id.*

Next, First Bank addresses Scottsdale's citation of *Deutsche Bank National Trust Company v. Regions Bank* for the proposition that First Bank did not have to agree to the method of payment.[113] First Bank contends that the case is inconsistent with the general principles of negotiable instruments found in the Uniform Commercial Code.[114] First Bank also cites to *Graves v. Johnson*,[115] an Indiana Court of Appeals case that First Bank asserts was cited by the court in *Deutsche Bank National Trust Company*. First Bank asserts that the court in *Graves* made an express finding that both of the joint payees had agreed to be paid by way of a joint check because they had been informed that the check would be made payable to both parties, no objection was made at that time, and there was an acquiescence when the one of the parties received the check.[116]

Furthermore, First Bank contends that Louisiana Civil Code articles 1790 and 1791 are not applicable in this case because they provide for only solidary obligations, payable to two or more persons.[117] First Bank contends that the obligation owed in this case is not joint or solidary because if it were, the policy would not provide that the proceeds would only be paid "as interests may appear."[118]

---

[113] *Id.*

[114] *Id.* at p. 5.

[115] 862 N.E.2d 716 (Ind. App. 2007).

[116] Rec. Doc. 90 at p. 5 (citing *Graves v. Johnson*, 862 N.E. 2d 716, 720–21 (Ind. App. 2007)).

[117] *Id.* at p. 6.

[118] *Id.*

### III. Law and Analysis

**A.     *Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[119] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[120] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[121] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[122] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[123]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[124] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his

---

[119] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[120] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[121] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[122] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[123] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[124] *Celotex*, 477 U.S. at 323.

claims.[125] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[126] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[127] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[128]

### B.    *Applying Louisiana Law*

When a federal court interprets a state law, it must do so according to the principles of interpretation followed by that state's highest court.[129] In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[130] These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[131] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must "employ

---

[125] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[126] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[127] *Little*, 37 F.3d at 1075.

[128] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[129] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[130] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004).

[131] *Id.* (quoting La. Civ. Code. art. 1 rev. cmt. b).

the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.[132] Although federal courts should not disregard the decisions of Louisiana's intermediate courts unless they are "convinced that the Louisiana Supreme Court would decide otherwise," they are not strictly bound by them.[133]

## C.    Analysis

In Scottsdale's "Motion for Summary Judgment,"[134] it moves for an order: (1) holding that the interpleader action filed on May 27, 2015 is proper; (2) dismissing Scottsdale as a disinterested stakeholder; (3) enjoining First Bank, Neely, and Binegar Christian, LLC from filing any other action against Scottsdale regarding the negotiable instruments at issue in this case and/or any amounts or proceeds listed on such negotiable instruments; (4) denying First Bank's claim for judicial interest; and (5) granting Scottsdale attorney's fees associated with this case. First Bank agrees that: (1) Scottsdale has the right to seek interpleader; (2) Scottsdale is entitled to dismissal from the action once it deposits the disputed funds into the registry of the Court; and (3) Scottsdale is entitled to an injunction to the extent it believes an injunction is necessary.[135] Although neither Neely nor Binegar Christian, LLC have filed oppositions to the motion for summary judgment, in their answers to the third party complaint, both Neely and Binegar Christian, LLC assert that the Court lacks subject matter jurisdiction.[136] Neither party, however, explains its assertion that the Court lacks jurisdiction. However, since the parties have challenged the Court's jurisdiction, the

---

[132] *Id.* (citation omitted).

[133] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

[134] Rec. Doc. 69.

[135] Rec. Doc. 70 at p. 8.

[136] Rec. Doc. 65 at p. 3; Rec. Doc. 66 at p. 3.

Court will address the issue of subject matter jurisdiction over the third party complaint first.

### 1.      Subject Matter Jurisdiction

A court has jurisdiction over a Rule 22 interpleader action when there is: "(1) complete diversity of citizenship, which is met when the stakeholder is diverse from all the claimants, even if citizenship of the claimants is not diverse; and [there is] (2) an amount-in-controversy that exceeds $75,000 exclusive of interests and costs."[137] In this case, Scottsdale alleges that it is a citizen of Ohio and Arizona and all defendants-in-interpleader are citizens of Louisiana.[138] The amount in controversy is asserted to be $106,728.80, the sum of the two checks at issue in this case.[139] Accordingly, the Court finds that it has subject matter jurisdiction over the interpleader action.

### 2.      Whether the Interpleader Action Is Proper

Federal Rule of Civil Procedure 22 governs interpleader actions. It provides:

(a)      Grounds.

(1)      By a Plaintiff. Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

(A)      the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

(B)      the plaintiff denies liability in whole or in part to any or all of the claimants.

(2)      By a Defendant. A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

---

[137] *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 635 n.46 (5th Cir. 2002).

[138] Rec. Doc. 52 at pp. 1–2.

[139] Rec. Doc. 69-1 at p. 5.

> (b)  Relation to Other Rules and Statutes. This rule supplements--and does not limit--the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

The Fifth Circuit instructs that:

> [a]n interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.[140]

Scottsdale requests that this Court find that the requirements for interpleader under Federal Rule of Civil Procedure 22 ("rule interpleader") have been met. At issue in this case is a single fund in the sum of $106,728.70. There are adverse claimants to the fund as both Neely and First Bank assert that they are entitled to the funds.[141] Accordingly, the Court finds that the interpleader action is proper and the Court will allow Scottsdale to deposit the funds into the registry of the Court.

### 3.  Whether First Bank is Entitled to Legal Interest

In First Bank's answer to Scottsdale's "Third Party Complaint and Counterclaim In Interpleader," First Bank asserts that it is entitled to legal interest from the date of the filing of its original complaint, however, it does not assert the grounds on which it claims it is entitled to legal interest.[142] In First Bank's opposition to Scottsdale's motion for summary judgment, however, First Bank asserts that it is entitled to legal interest pursuant to Louisiana Civil Code article 2000.[143]

---

[140] *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

[141] Rec. Doc. 52; Rec. Doc. 54; Rec. Doc. 65; Rec. Doc. 66.

[142] Rec. Doc. 54 at p. 7.

[143] Rec. Doc. 70 at pp. 21–22.

Scottsdale contests that First Bank is entitled to interest pursuant to Article 2000 and additionally contends that First Bank's claim for legal interest should be dismissed because Scottsdale "did not enjoy free use of the funds when they were pledged to First Bank, Neely, and Binegar Christian[, LLC] through a valid negotiable instrument" and that interest was terminated by the deposit of the funds into the registry of the court.[144] The Court will address each of these arguments in turn.

### a.   Louisiana Civil Code Article 2000

First Bank asserts that, pursuant to Louisiana Civil Code article 2000, it is entitled to interest in the amount of $4,280.84, which it asserts it calculated from the date of formal judicial demand through the one year anniversary of the filing of the suit.[145] Article 2000 provides:

> [w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by [Louisiana Revised Statute] 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recovery no more.[146]

First Bank contends that Check 1, in the amount of $89,750.00, was made payable to "Edward Neely and Binegar Christian, LLC and First Bank and Trust" and that Check 2, in the amount of $16,978.70, was made payable to "Edward Neely & First Bank & Trust."[147] According to First Bank, Scottsdale tendered both checks to Neely and First Bank received the checks, which were not endorsed, from Neely's counsel, David Binegar.[148] First Bank asserts that it has not been paid

---

[144] Rec. Doc. 69-1 at pp. 10–11.

[145] Rec. Doc. 70 at pp. 8–9.

[146] La. Civ. Code art. 2000.

[147] Rec. Doc. 70-2 at pp. 1–2.

[148] Rec. Doc. 1 at p. 4; Rec. Doc. 70 at p. 16.

anything by Scottsdale, it did not agree to accept Scottsdale's joint check, and therefore is entitled to interest on its claim.[149] First Bank contends that Scottsdale was advised at the time of formal judicial demand that the checks could not be deposited because the payees could not agree on how to distribute the amounts and therefore Scottsdale was called upon to honor its contractual commitment to pay the proceeds "as interest may appear."[150] First Bank asserts that it calculated the amount of $4,280.84 using the Louisiana rate of interest of four percent per year and that interest should continue to accrue until Scottsdale deposits the principal sum into the registry of the Court.[151]

In opposition, Scottsdale asserts that any obligation against it was suspended by the issuance of a check to defendants-in-interpleader.[152] In support, Scottsdale cites Louisiana Revised Statute 10:3-310(b), which provides that "if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken . . . ." Citing Louisiana Revised Statute 10:3-310(b)(1), Scottsdale asserts that the "suspension of the obligation continues until dishonor of the check or until it is paid or certified." Scottsdale argues that its issuance of the check was valid and delivery was made when it was delivered to any one of the payees.[153]

First Bank asserts that Scottsdale's obligation was not suspended after the check was issued.[154] In support, First Bank cites Louisiana Revised Statute 10:3-110(d), which provides that:

---

[149] Rec. Doc. 70 at pp. 22–23.

[150] *Id.* at p. 13.

[151] *Id.* at pp. 8–9 (citing La. Rev. Stat. 9:3500).

[152] Rec. Doc. 69-1 at p. 7.

[153] *Id.*

[154] *Id.* at p. 14.

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

First Bank contends that in order to deposit the check, First Bank would have had to obtain the endorsement of all of the payees of the checks, forge the missing endorsement, or deposit the checks without the endorsements.[155] This provision does not address, however, how a disagreement between the payees as to the distribution of the funds affects the suspension of the obligation under Louisiana Revised Statute 10:3-310(b)(1).

Scottsdale also cites *Deutsche Bank National Trust Company v. Regions Bank*,[156] a case from another section of the Eastern District of Louisiana. In *Regions Bank*, an insurance company issued a check as payment for an insurance claim to the named insured and the sole mortgage holder.[157] It was alleged that the named insured forged the mortgage holder's endorsement and deposited the proceeds into his personal account.[158] The court rejected the plaintiff's argument that the insurance company had not issued a check to a valid payee and held that when the check was delivered to the named insured, the check was delivered to all of the payees.[159] Citing Louisiana Revised Statute 10:3-310(b), the court held that because the insurance company had issued an uncertified check and

---

[155] *Id.*

[156] No. 12-2436, 2013 WL 192993 (E.D. La. Jan. 17, 2013) (Lemelle, J.).

[157] *Id.* at *1.

[158] *Id.*

[159] *Id.* at *2.

it had been cashed, its obligation was discharged.[160]

In response, First Bank contends that the reasoning in *Regions Bank* is inconsistent with the general rules of commerce because "[t]he first rule of payment of obligations is that payment must be made in legal tender, that is, money" and "[n]o one can be required to accept payment of an obligation in anything other than money."[161] In support, First Bank cites to a District of North Dakota case, *Frandson v. Oasis Petroleum North America, LLC*,[162] for the proposition that "in order for payment in other than legal tender to have effect, there must be agreement of the parties, or at least, a failure to object."[163] The court in that case did state that it was a "generally-accepted common rule governing payment of monetary obligations [] that, absent an agreement providing otherwise, an obligee can insist upon payment in legal tender . . . ."[164] However, in the very next sentence, not quoted by First Bank, the court clarified that "because use of checks and other commonly-accepted means of payment is so pervasive, there has developed a corresponding rule that use of one of these other methods of payment is sufficient to satisfy a monetary obligation unless the obligee demands payment in legal tender and allows reasonable time to procure it."[165] First Bank does not cite to any Louisiana law in support of its assertion that in order for payment to be properly made by check, First Bank had to explicitly agree to accept a check as payment.

First Bank also cites a Texas Court of Appeals case, *ViewPoint Bank v. Allied Property and*

---

[160] *Id.*

[161] *Id.* (citing *Juilliard v. Greenman (The Legal Tender Cases)*, 110 U.S. 421 (1884)).

[162] 870 F. Supp. 2d 726 (D.N.D. 2012).

[163] Rec. Doc. 70 at p. 17.

[164] *Frandson*, 870 F. Supp. 2d at 731.

[165] *Id.*

*Casualty Insurance Company*.[166] In that case, an insurance company issued checks jointly payable to the insured and the mortgagee, but the insured deposited the checks without the mortgagee's endorsement or consent.[167] The insurance company argued that its obligation was discharged because the checks were paid pursuant to the Texas statute which provides that "[p]ayment or certification of the check results in discharge of the obligation to the extent of the amount of the check."[168] The court found that payment to one payee without the endorsement of the other did not constitute payment to a person entitled to enforce the checks and therefore the insurance company's obligation was not discharged.[169]

First Bank also cites a case from the Eastern District of Michigan, *Versai Management Corp. v. Citizens First Bank*.[170] In *Versai Management Corp.*, two insurance companies issued checks jointly to the insured, a public adjuster, and two other payees.[171] The public adjuster forged the endorsements of the other co-payees and deposited the funds into its own account.[172] The court there found that because the checks were payable jointly and not alternatively, the endorsement by one payee was insufficient to permit the valid negotiation of the check on behalf of the other payees.[173] First Bank contends that these cases support its assertion that "less than all payees cannot bind any payee who does not join in a particular action relating to a check, if the payees are not alternative

---

[166] 439 S.W.3d 626 (Tex. App. 2014).

[167] *Id.* at 628.

[168] Tex. Bus. & Com. Code Ann. § 3.310(b)(1).

[169] *ViewPoint Bank*, 439 S.W.3d at 631.

[170] No. 08-1529, 2010 WL 141798 (E.D. Mich. Apr. 5, 2010).

[171] *Id.* at *1.

[172] *Id.* at *1–2.

[173] *Id.* at *3.

payees."[174]

Scottsdale asserts that these cases from Texas and Michigan do not address Louisiana law and therefore do not provide any guidance for the Court to make an *Erie* guess.[175] First Bank contends, however, that the Louisiana Supreme Court has instructed that because the Uniform Commercial Code was adopted in Louisiana in an effort to harmonize the commercial law of Louisiana with that of other states, Louisiana courts should look to the jurisprudence of other states' interpretation of corollary Uniform Commercial Code provisions.[176] Accordingly, the Court finds that the jurisprudence of other state courts is persuasive in its interpretation of Louisiana's Uniform Commercial Code provisions.

In *McAllen Hospitals, L.P. v. State Farm County Mutual Insurance Company of Texas*, also cited by First Bank, the Supreme Court of Texas addressed the question of whether an insurer's obligation is discharged when a joint payee forges the endorsement of a copayee and deposits the funds.[177] The court held that delivery of a check to one copayee constitutes constructive delivery to all; however, payment to one nonalternative copayee without the endorsement of the other does not discharge the obligation.[178] In its reasoning, the court cited a legal treatise, *Williston on Contracts*,[179] which had evaluated a Texas Court of Appeals case, *Benchmark Bank v. State Farm Lloyds*,[180] and

---

[174] Rec. Doc. 90 at p. 4.

[175] Rec. Doc. 83 at p. 4.

[176] Rec. Doc. 90 at p. 2 (citing *Specialized Loan Servicing, LLC v. January*, 2012-2668 (La. 6/28/13); 119 So. 3d 58, 588–590).

[177] 433 S.W.3d 535 (Tex. 2014).

[178] *Id.* at 540.

[179] 28 *Williston on Contracts* § 72:36 (4th ed.).

[180] 893 S.W.2d 649 (Tex. App. 1994).

a case from the Supreme Judicial Court of Massachusetts, *General Motors Acceptance Corp. v. Abington Casualty Insurance Co.*,[181]   and found that the Massachusetts decision was "unquestionably representative of the better view."[182]

The Supreme Court of Texas, in *McAllen Hospitals, L.P.*, quoting *General Motors Acceptance Corp.* held that a finding that an obligation is discharged when one copayee deposits a check after forging the endorsement of the other payee would result in "no assurance that all the joint payees would receive payment."[183] The Supreme Court of Texas noted that other jurisdictions had cited the Supreme Judicial Court of Massachusetts in *General Motors Acceptance Corp.* and had adopted its reasoning.[184] *McAllen Hospitals, L.P.* is also consistent with the comments to Louisiana Revised Statute 10:3-310 which provide that "[i]f a payor bank pays a person not entitled to enforce the instrument . . . the suspension of the underlying obligation continues because the check has not been paid."[185]

In this case, however, unlike in the cases cited above, the checks have not been paid. At issue in this case is whether Scottsdale's delivery of a check to Neely can constitute delivery of the check to all copayees and whether the issuance of the check suspended Scottsdale's obligation such that it does not owe any interest. Louisiana Revised Statute § 10:3-420 states that "[i]f a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees." This is in accord with the decisions of other state courts discussed above. First Bank contends that

---

[181] 413 602 N.E.2d 1085 (Mass. 1992).

[182] *McAllen Hosps., L.P.*, 433 S.W.3d at 540.

[183] *Id.*

[184] *Id.* (citing *State ex rel. N.D. Housing Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425 (N.D. 2006); *Crystaplex Plastics, Ltd. v. Redev. Agency of City of Barstow*, 77 Cal. App. 4th 990 (2000)).

[185] La. Rev. Stat. 10:3-310(b) cmt. 4.

the concept of delivery to one payee being delivery to all payees is not relevant in the case where a payee rejects the form of payment and sues to enforce the obligation.[186] As noted above, however, First Bank has not cited to any Louisiana authority to support its contention that in order to be valid, First Bank had to explicitly agree that it would accept a check as payment in lieu of legal tender. Accordingly, the Court finds that Scottsdale, in delivering the check to Neely, constructively delivered it to all co-payees.

Next, therefore, the Court must address whether this delivery of the check suspended Scottsdale's obligation such that it does not owe any legal interest pursuant to Louisiana Civil Code article 2000. As noted above, Louisiana Revised Statute 10:3-310(b) provides that "if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken . . . ." Louisiana Revised Statute 10:3-310(b)(1) provides that "suspension of the obligation continues until dishonor of the check or until it is paid or certified." First Bank contends that it did not "take" Scottsdale's checks for the obligation that Scottsdale owed to First Bank, but rather that the check was received by Neely's attorney based upon a settlement agreement.[187] According to First Bank, "[o]nly all payees, acting together could agree to take the checks in lieu of the obligations otherwise owed."[188] First Bank asserts that it was not willing to "take" Scottsdale's tendered checks because they were made payable to parties who it contends had no interest in the proceeds.[189] Furthermore, First Bank asserts that, contrary to Scottsdale's representation, the checks were not

---

[186] Rec. Doc. 70 at p. 18.

[187] *Id.* at p. 15.

[188] *Id.* at p. 16.

[189] *Id.*

endorsed when First Bank received them.[190]

In response, Scottsdale asserts that neither Louisiana Revised Statute 10:3-310(b) nor Louisiana jurisprudence define the term "take" as used in the statute.[191] Scottsdale contends that comment 1 to Louisiana Revised Statute 10:3-420 provides that "if a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees." In addition, Scottsdale cites Louisiana Civil Code articles 1790 and 1791 which provide that "[a]n obligation is solidary for the obligees when it gives each obligee the right to demand the whole performance from the common obligor" and "[b]efore a solidary obligee brings action for performance, the obligor may extinguish the obligation by rendering performance to any of the solidary obligees." First Bank contends, however, that articles 1790 and 1791 only provide for the discharge of solidary obligations which are payable to two or more persons.[192] According to First Bank, the obligation owed in this case is not joint or solidary because the policy provides that the proceeds would be paid "as interests may appear."[193]

Given the Court's finding that the delivery of the payment of the check to Neely constituted delivery of the check to all co-payees, First Bank's only remaining argument is that First Bank did not agree to "take" the check for the obligation pursuant to Louisiana Civil Code article 2000. However, First Bank's argument appears to be based upon its assertion that it had to explicitly agree to accept a check in lieu of legal tender for the obligation. As discussed above, the Court does not find this argument persuasive. Accordingly, the Court finds that Scottsdale's obligation was

---

[190] *Id.*

[191] Rec. Doc. 83 at p. 3.

[192] Rec. Doc. 90 at p. 6.

[193] *Id.*

suspended pursuant to Article 2000 upon its delivery of the check to Neely. Therefore, the Court finds that Scottsdale is not required to pay legal interest on the obligation on these grounds.

### b.       Interest as a Plaintiff-in-Interpleader

Scottsdale asserts that it is not responsible for interest as a plaintiff-in-interpleader because any delay in its deposit of funds into the registry of the Court is reasonable and through no fault of Scottsdale.[194] Scottsdale contends that it was brought into this suit to defend its payment to First Bank and Neely, not as part of an interpleader and that upon filing of its petition for interpleader, it sought leave from the Court to deposit the funds.[195] First Bank does not explicitly state that Scottsdale should be required to deposit an amount of prejudgment interest due to a failure to deposit funds in a timely manner. However, in its opposition, First Bank asserts that "[h]ad Scottsdale, upon receipt of the suit, provoked an interpleader, or even deposited its funds into the registry of court, any interest would have been so negligble as to not have generated this controversy. However, it chose not to do that."[196] Furthermore, First Bank asserts that Scottsdale has "had the use of the funds since the checks were issued, and knew that it had use of the funds since suit was filed against it."[197] First Bank also avers, throughout its memoranda, that Scottsdale has not yet made a deposit of the funds. In light of the fact that Scottsdale's arguments appear to fit within the three factors the Fifth Circuit has identified as factors courts may use in determining whether interest should be awarded in interpleader actions, discussed below, the Court will address these arguments for an award of interest as well.

---

[194] Rec. Doc. 83 at p. 5.

[195] *Id.*

[196] Rec. Doc. 70 at p. 13.

[197] *Id.* at p. 19.

In *Aetna Casualty & Surety Co.*, the Fifth Circuit observed that in determining whether interest should be awarded in an interpleader action, the district court had considered: "(1) whether the stakeholder unreasonably delayed in instituting the action or depositing the fund with the court[;] (2) whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants who have claim to the fund[;] and (3) whether the stakeholder eventually deposited the fund into the court's registry."[198] The Fifth Circuit, however, did not explicitly adopt the three-factor test. In *Gabarick v. Laurin Maritime (America), Inc.*, the Fifth Circuit noted that this three-factor test had been mentioned in *Aetna Casualty & Surety Co.*, but noted that the Fifth Circuit had not adopted it and held that the district court had erred in holding the defendant liable for prejudgment interest on the interpleaded funds on other grounds.[199] The Court will consider these factors in its determination of whether interest should be awarded in this case.

This action was instituted by First Bank on September 4, 2014.[200] Scottsdale filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 11, 2014.[201] In ruling on the motion to dismiss, the Court found that neither party had cited to a case directly addressing the issue of whether an insurer could satisfy its obligation to proceeds "as interests appear" by issuing a joint check to two parties who dispute their respective entitlement to the proceeds.[202] The Court, however, found that, taking First Bank's factual allegations as true, First Bank had plausibly

---

[198] No. 95-60152, 1995 WL 581567 (5th Cir. Aug. 24, 1995).

[199] 649 F.3d 417, 422 (5th Cir. 2011).

[200] Rec. Doc. 1.

[201] Rec. Doc. 11.

[202] Rec. Doc. at p. 22.

stated a claim for the proceeds of the checks.[203] The same day the motion to dismiss was denied, Scottsdale requested and was granted leave to file a "Third Party Complaint and Counterclaim in Interpleader."[204] Two months later, Scottsdale requested leave to deposit funds into the Court's registry.[205]

Although Scottsdale cannot be said to have acted diligently in depositing the funds or instituting the action, nor does the Court find that it acted unreasonably as to merit an award of legal interest. Scottsdale has in fact requested leave to deposit the funds,[206] and is properly waiting for Court approval before doing so. First Bank has not articulated why the two-month delay is unreasonable. Furthermore, although Scottsdale did initially contest liability, the motion to dismiss was not frivolous. Accordingly, the Court finds that Scottsdale is not required to pay legal interest on these grounds.

### 4.    Attorney's Fees

Scottsdale also contends that it is entitled to attorney's fees as a disinterested stakeholder.[207] It asserts that it was forced to expend attorney's fees and litigation costs to defend itself in a dispute that is really between First Bank and Neely.[208] In addition, it contends that First Bank has "made misrepresentations to this Court since the inception of the suit; has no valid cause of action against Scottsdale; and per the allegations of Neely and Binegar, use[d] this suit as a vehicle to avoid the

---

[203] *Id.* at p. 24.

[204] Rec. Doc. 52.

[205] Rec. Doc. 67.

[206] *Id.*

[207] Rec. Doc. 69-1 at p. 11.

[208] Rec. Doc. 83 at p. 6.

jurisdiction of the state district court."[209] In opposition, First Bank asserts that Scottsdale is not entitled to attorney's fees because it has not acted as a disinterested stakeholder in this action.[210] First Bank asserts that Scottsdale first resisted paying anything to First Bank and only filed its interpleader action after the Court determined that First Bank had stated a cause of action.[211] In addition, First Bank argues that Scottsdale has not stated a valid reason for not depositing any money into the registry of the court.[212]

Attorney's fees are available in an interpleader action when the interpleader is a disinterested stakeholder and not in substantial controversy with one of the claimants.[213] An award of attorney's fees is in the discretion of the district court.[214] In *Royal Indemnity Co. v. Bates*, the Fifth Circuit identified five factors as relevant to a determination regarding whether to award attorney's fees and costs to an interpleader-plaintiff: "(1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefited the interpleader-plaintiff; and (5) whether the claimants improperly protracted the proceedings."[215] In *Phillips Petroleum Co. v. Hazlewood*, the Fifth Circuit affirmed a trial court's denial of attorney's fees for a stakeholder who the trial court had found "actively took a position opposing" one

---

[209] Rec. Doc. 69-1 at p. 11.

[210] Rec. Doc. 70 at p. 23.

[211] *Id.*

[212] *Id.*

[213] *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999).

[214] *Id.*

[215] 307 F. App'x 801, 806 (5th Cir. 2009) (citing 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1719 (3d ed.)).

claimant's claims and supporting the claims of another claimant.[216]

At the commencement of this case, Scottsdale contested liability entirely. On December 11, 2014, Scottsdale filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it had satisfied its duty under the insurance policy by its issuance of a check jointly payable to Neely and First Bank.[217] It was not until the Court denied Scottsdale's motion to dismiss on May 27, 2015,[218] that it requested leave to file a "Third Party Complaint and Cross Claim for Interpleader."[219] Despite being granted leave to file its interpleader cross claim on May 27, 2015,[220] however, Scottsdale did not file a motion for leave under Federal Rule of Civil Procedure 67 to deposit the sum of the checks into the Court's registry until August 4, 2015.[221] Although the Court finds that this conduct was not unreasonable, it cannot find that Scottsdale has acted with diligence as a disinterested stakeholder. Therefore, the Court denies Scottsdale's motion for attorney's fees.

### 5. Dismissal of Scottsdale

Both Scottsdale and First Bank agree that Scottsdale should be dismissed from the case upon deposit of the disputed funds into the registry of the Court.[222] "A district court has broad powers in an interpleader action."[223] A district court may issue an order discharging a stakeholder if the

---

[216] 534 F.2d 61, 63 (5th Cir. 1976).

[217] Rec. Doc. 11-1.

[218] Rec. Doc. 49.

[219] Rec. Doc. 50.

[220] Rec. Doc. 51.

[221] Rec. Doc. 67.

[222] Rec. Doc. 69-1 at p. 5; Rec. Doc. 70 at p. 8.

[223] *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

stakeholder is disinterested.[224] Scottsdale asserts that it is disinterested because it makes no claim to the funds and that no material controversy involving Scottsdale exists.[225] No party disputes this. Accordingly, the Court will grant Scottsdale's motion to dismiss it from the case upon Scottsdale's deposit of the funds into the registry of this Court.

### 6. Injunction Against Defendants-in-Interpleader

Scottsdale and First Bank also agree that Scottsdale is entitled to an injunction against Defendants-in-Interpleader, enjoining them from filing any other action against Scottsdale regarding the negotiable instruments at issue or the proceeds of the instruments.[226] Scottsdale does not identify any pending state court actions or federal court proceedings outside of this case that it seeks this Court to enjoin, asking only that the Court enjoin Defendants-in-Interpleader from "filing any other action against Scottsdale with regarding [sic] to the subject negotiable instruments and/or any amounts or proceeds listed on such negotiable instruments."[227]

In support of its motion for an injunction, Scottsdale cites the Fifth Circuit in *Auto Parts Manufacturing Mississippi, Inc. v. King Construction of Houston, LLC*[228] in which it quotes 28 U.S.C. § 2361 for the proposition that a district court can enjoin the institution or prosecution of any proceeding in state or federal court affecting the property involved in the interpleader action. However, the statute authorizing a district court to restrain claimants from instituting or prosecuting

---

[224] *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 195 (5th Cir. 2015) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1714 (3d ed.)).

[225] Rec. Doc. 69-1 at p. 6.

[226] Rec. Doc. 69-1 at p. 9; Rec. Doc. 70 at p. 8.

[227] Rec. Doc. 69 at p. 1.

[228] 782 F.3d 186, 195 (5th Cir. 2015).

further proceedings in state or federal courts is limited to statutory interpleader actions.[229]

In *Holland America Insurance Company v. Succession of Roy*, the Fifth Circuit found that a motion for an injunction in a Federal Rule of Civil Procedure 22 interpleader action must be evaluated under the standards of Federal Rule of Civil Procedure 65.[230] The Fifth Circuit explained that a district court may issue an injunction under Rule 65 "if the court finds that irreparable injury would result to the movant in its absence, that the threatened injury to the movant outweighs the harm that the injunction may cause the nonmovant, that there is a likelihood of success on the merits, and that the public interest would not be adversely affected by the injunction."[231] The Fifth Circuit noted that injunctive relief is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."[232]

Regarding its motion for an injunction, Scottsdale asserts only that it "filed an interpleader action, has joined the proper parties, and unconditionally deposited the funds at issue into the registry of the court. Scottsdale should be dismissed as a party to this suit and any claim of First Bank (or any other party) against Scottsdale with regard to the funds should be dismissed and enjoined."[233] The Fifth Circuit in *Holland* observed that "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."[234] Scottsdale does not allege any

---

[229] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996–97 (5th Cir. 1985); *Pan Am. Fire & Cas. Co. v. Revere*, 188 F. Supp. 474, 484 (E.D. La. Sept. 30, 1960) (Wright, J.); 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1717 (3d ed.).

[230] 777 F.2d 992, 996–97 (5th Cir. 1985).

[231] *Id.* at 997.

[232] *Id.*

[233] Rec. Doc. 69-1 at p. 10.

[234] 777 F.2d at 997.

irreparable injury that it would suffer in the absence of an injunction.  First Bank has agreed that Scottsdale is entitled to dismissal from this action and to an injunction.[235] First Bank has also stated that it has "no intent to proceed against Scottsdale once this case is fully resolved."[236] Furthermore, Scottsdale has not identified any pending litigation filed against it by either Neely or Binegar Christian, LLC nor has Scottsdale provided the Court with any reason to believe that litigation pertaining to the checks at issue in this case will be filed in the future. Accordingly, the Court finds that Scottsdale has not met its burden of showing that it will suffer irreparable injury in the absence of an injunction. Therefore, the Court denies Scottsdale's motion for an injunction against Defendants-in-Interpleader.

## IV. Conclusion

For the foregoing reasons, the Court finds that the Court has jurisdiction over the interpleader action and the interpleader action is proper. In addition, the Court finds that Scottsdale is entitled to be dismissed from the case following the deposit of funds into the Court's registry but that Scottsdale is not entitled to an injunction against the claimants from filing any additional actions against Scottsdale regarding the negotiable instruments at issue in this case and/or the amounts or proceeds listed on the negotiable instruments. Finally, the Court finds that First Bank is not entitled to interest on the sum of the checks nor is Scottsdale entitled to attorney's fees in connection with this case.

---

[235] Rec. Doc. 70 at p. 8.

[236] *Id.*

Accordingly;

**IT IS HEREBY ORDERED** that Scottsdale's "Motion for Summary Judgment"[237] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is granted to the extent that it seeks: (1) a declaration that the interpleader action in this case is proper; (2) a finding that First Bank is not entitled to legal interest; and (3) Scottsdale's dismissal from the case upon the deposit of the funds into the Court's registry.

**IT IS FURTHER ORDERED** that the motion is denied to the extent that the motion seeks an award of attorney's fees for Scottsdale and an injunction against First Bank, Neely, and Binegar Christian, LLC from filing any additional actions against Scottsdale regarding the negotiable instruments at issue in this case and/or the amounts or proceeds listed on the negotiable instruments.

**NEW ORLEANS, LOUISIANA**, this _10th_ day of November, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[237] Rec. Doc. 69.

41